STATE OF NEBRASKA, APPELLANT, V. LAUREEN L. WOJCIK, APPELLEE.

472 N.W.2d 732

Filed August 2, 1991.   No. 91-127.

James S. Jansen, Douglas County Attorney, and Maria R. Leslie for appellant.

Thomas M. Kenney, Douglas County Public Defender, and Timothy P. Burns for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

Without a plea agreement with the State and on her nolo contendere plea entered while represented by counsel, Laureen L. Wojcik was convicted of knowingly and intentionally abusing her 3-month-old son, David, a crime under Neb. Rev. Stat. § 28-707(1) (Reissue 1989) of the Nebraska Criminal Code which, pertinent to Wojcik's case, provides:

> A person commits child abuse if he or she knowingly [or] intentionally . . . causes or permits a minor child to be:
>
> (a) Placed in a situation that endangers his or her life or health; or
>
> (b) Cruelly confined or cruelly punished; or
>
> (c) Deprived of necessary food, clothing, shelter, or care.

Intentional child abuse is a Class IV felony. See § 28-707(4). After Wojcik's nolo contendere plea on November 26, 1990, and a presentence report, the district court for Douglas County sentenced Wojcik to probation for 3 years. Pursuant to Neb. Rev. Stat. § 29-2320 (Reissue 1989), the State has appealed, claims that the sentence of probation is too lenient, and requests this court to set aside Wojcik's sentence and impose an appropriate sentence under the circumstances. See Neb. Rev. Stat. § 29-2323 (Reissue 1989) (sentencing alternatives available to the Nebraska Supreme Court when a sentence imposed is too lenient).

## STANDARD OF REVIEW

When the State, pursuant to Neb. Rev. Stat. §§ 29-2320 et seq. (Reissue 1989), appeals and claims that a sentence imposed on a defendant is excessively lenient, the standard of review is whether the sentencing court abused its discretion in the sentence imposed. *State v. Reynolds*, 235 Neb. 662, 457 N.W.2d

405 (1990); *State v. Stastny*, 227 Neb. 748, 419 N.W.2d 873 (1988).

## BACKGROUND FOR CHARGE

At the time of the charged child abuse, Wojcik, an admitted alcoholic since she was 19 years of age, was 33 years old with a ninth grade education and was divorced. In addition to David, Wojcik had three other children at home: a 17-year-old son; one daughter, age 10; and another daughter, who was 6 years old. In 1976, rather than "going through the hassle" of a child abuse charge, Wojcik relinquished her then 3-year-old son for adoption. David is hydrocephalic.

In 1979, in the district court for Sarpy County, Wojcik was convicted of conspiracy to commit first degree murder and was sentenced to imprisonment for 5 to 15 years in the Nebraska Penal and Correctional Complex. However, Wojcik was paroled in 1983, but violated her parole by becoming intoxicated and in 1984 was returned to confinement in the women's penal facility at York, from which she was discharged in 1987.

In December 1989, police investigated a child abuse complaint against Wojcik concerning her younger daughter, who was then 5 years of age. A member of Wojcik's family observed Wojcik hit the little girl with a "2x4" and, with a clinched fist, strike the child in the eye, resulting in the child's swollen eye. In a later interview with a psychologist, the daughter stated that Wojcik "threw me against the wall." A child abuse charge was filed, but was later dismissed by the State in April 1990.

On the evening of June 10, 1990, Wojcik brought David to the emergency room at the University of Nebraska Medical Center, where he was admitted to the pediatric intensive care unit. Physicians who admitted David at UNMC readily noted David's hydrocephalus and, additionally, observed severe swelling of David's head. On inquiry from a physician, Wojcik denied that David had sustained any recent injury. One of the physicians asked when the extraordinary swelling of David's head had begun. Wojcik at first said that the swelling started 2 days earlier, but then changed the time to approximately a week

and, finally, to 10 days before bringing David to the hospital. Without any clarifying explanation, Wojcik had failed to keep a medical appointment for David on May 21, 1990. David was placed on oxygen with constant surveillance. Hospital records contained the remark that Wojcik was intoxicated at the time of David's admission.

Hydrocephalus is a condition which may occur in infants and is marked by an abnormal increase in the cerebrospinal fluid normally present in small amounts in and around the brain. Normally, the human brain contains approximately 2 ounces of cerebral fluid, but in hydrocephalus the brain may contain several pints of fluid. Presence of the fluid is accompanied by an enlargement of the skull and cerebral ventricles, which are small chambers or cavities within the brain, and increased pressure of fluid between the brain and skull and within the ventricles. The increased pressure causes brain tissue to become thinner, even shrivel, and atrophy, while the head enlarges, with the result that mental deterioration follows and fatal convulsions may ensue.

A pediatrician at UNMC rendered the following diagnosis:

David Wojcik is a 3 month old admitted to UNMC Intensive Care Unit on June 10, 1990. David has massive bilateral chronic subdural hematomas [a localized collection of clotted blood beneath the outer of the three membranes covering the brain and spinal cord] and communicating hydrocephalus [nothing obstructs the flow of cerebral fluid, but the fluid accumulates because it is not systemically absorbed in an individual]. He is severely neurologically compromised at this time related to these problems, and the increased intercranial pressure resulting from them.

From the clinical presentation and the medical evaluations performed since admission, it is evident to me that David's chronic subdural hematomas are the direct result of abuse and most consistent with "shaken baby" syndrome. As mentioned, the subdural hematomas are chronic [existing for a long duration], and have been developing and no doubt symptomatic for some time.

Mother's history regarding David's health status is

inconsistent and changeable. Evidence of medical neglect is apparent in mother's failure to seek medical attention for David's injury until such time as the problems were extreme.

Hospital records prepared by David's attending and examining physicians included comments such as "marked megalocephaly probably secondary to trauma" and "[b]ilateral subdural hematomas secondary to shaken baby syndrome." A "Diagnostic Radiology Consultation Report" for David contained: "There are massive bilateral extra axial fluid collections, consistent with subdural hematomas, probably subacute. There are several small areas of increased density in the left subdural, which probably represents more recent hemorrhage. The brain is compressed symmetrically from both sides. The etiology is most likely secondary to trauma."

To relieve the accentuated hydrocephalus, surgeons drilled into David's skull at a cranial horizontal midline just behind his right ear and, through the cranial opening, made a "small hole . . . in the dura using electrocautery." After making an incision in David's abdomen, surgeons used a catheter as a ventriculoperitoneal shunt for passage of cerebral fluid from David's brain to his abdomen for systemic absorption.

Under the circumstances, David's physicians notified the Omaha Police Division, which commenced an investigation into possible child abuse. In the course of the investigation on June 12, after police officers obtained a "Rights Advisory" form, that is, Wojcik's acknowledgment that she had received the *Miranda* warning or admonition from the police officers, and after Wojcik's waiver of the rights expressed in *Miranda*, Wojcik told officers that on an afternoon between May 7 and 11, 1990, David was lying on his back in his crib and crying, while Wojcik's other children were downstairs. According to Wojcik, she went over to the crib, leaned over, picked up David, and "shook him a couple of times and then told him to be quiet so I could think." When an officer asked how long Wojcik had shaken David, Wojcik answered: "Just for a few minutes. Tryin' to get him to be quiet, because I was upset; I was tryin' to think. I couldn't think when he cried." Shortly thereafter, Wojcik's mother appeared on the scene, and Wojcik handed

David to her mother, left the house, and went for a walk.

Wojcik was charged under § 28-707(1) and convicted by her nolo contendere plea to the charge of intentional child abuse concerning David. Wojcik's children, except the 17-year-old son, are in temporary foster homes under jurisdiction of the separate juvenile court of Douglas County.

## WOJCIK'S SENTENCE

As a Class IV felony, intentional child abuse is punishable by 5 years' imprisonment, a $10,000 fine, or both such imprisonment and fine, with no specified minimum penalty on conviction.

Another possible sentence statutorily available to the sentencing court was probation pursuant to Neb. Rev. Stat. § 29-2260 (Reissue 1989), which provides in part:

(2) . . . [T]he court may withhold sentence of imprisonment unless, having regard to the nature and circumstances of the crime and the history, character, and condition of the offender, the court finds that imprisonment of the offender is necessary for protection of the public because:

(a) The risk is substantial that during the period of probation the offender will engage in additional criminal conduct;

(b) The offender is in need of correctional treatment that can be provided most effectively by commitment to a correctional facility; or

(c) A lesser sentence will depreciate the seriousness of the offender's crime or promote disrespect for law.

(3) The following grounds, while not controlling the discretion of the court, shall be accorded weight in favor of withholding sentence of imprisonment:

(a) The crime neither caused nor threatened serious harm;

(b) The offender did not contemplate that his or her crime would cause or threaten serious harm;

(c) The offender acted under strong provocation;

(d) Substantial grounds were present tending to excuse or justify the crime, though failing to establish a defense;

(e) The victim of the crime induced or facilitated commission of the crime;

(f) The offender has compensated or will compensate the victim of his or her crime for the damage or injury the victim sustained;

(g) The offender has no history of prior delinquency or criminal activity and has led a law-abiding life for a substantial period of time before the commission of the crime;

(h) The crime was the result of circumstances unlikely to recur;

(i) The character and attitudes of the offender indicate that he or she is unlikely to commit another crime;

(j) The offender is likely to respond affirmatively to probationary treatment; and

(k) Imprisonment of the offender would entail excessive hardship to his or her dependents.

(4) When an offender who has been convicted of a crime is not sentenced to imprisonment, the court may sentence him or her to probation.

After the court sentenced Wojcik to probation for 3 years, the State appealed, claiming that the sentence imposed was too lenient.

## CLAIM OF EXCESSIVELY LENIENT SENTENCE

Section 29-2322 provides that when the State has appealed and claims that a sentence is excessively lenient,

the Supreme Court, upon a review of the record, shall determine whether the sentence imposed is excessively lenient, having regard for:

(1) The nature and circumstances of the offense;

(2) The history and characteristics of the defendant;

(3) The need for the sentence imposed:

(a) To afford adequate deterrence to criminal conduct;

(b) To protect the public from further crimes of the defendant;

(c) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and

(d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and

(4) Any other matters appearing in the record which the court shall deem pertinent.

Regarding possible dispositions of the State's appeal based on a claim of excessively lenient sentence, § 29-2323 provides:

Upon consideration of the criteria enumerated in section 29-2322, the Supreme Court shall:

(1) If it determines that the sentence imposed is excessively lenient, set aside the sentence, and:

(a) Remand the case for imposition of a greater sentence;

(b) Remand the case for further sentencing proceedings; or

(c) Impose a greater sentence; or

(2) If it determines that the sentence imposed is not excessively lenient, affirm the sentence.

The crime of child abuse frequently includes not only physical injury inflicted on a child, but mental trauma as well. Until experience teaches otherwise, a child looks to a parent for love, help, and a relationship of unlimited trust. At least in a child's early years, the child needs a nurturing parent for the very continuation of life itself. This is especially true in the case of David, who was both dependent and defenseless in his crib within his home, which ordinarily should be a child's sanctuary or refuge from the hurt waiting outside. David's mother, however, betrayed parental trust by making risk a very real part of David's life. Violence became not only a part of life, but a way of life taught and learned in the Wojcik home. What is learned today will be taught tomorrow. Child abuse cannot be a part of that education. We will not attempt a complete itemization of all the qualities of a good parent, but parental indifference, even apathy, to a child's injury inflicted by a parent would not be on that list anywhere. While violence has been a persistent part of Wojcik's life, inside and outside her home, that is not the type of force which ought to drive her children, or anyone's children, in their lives.

Therefore, having considered the nature of the offense and

its circumstances, Wojcik's character and history of violence, the seriousness of child abuse as a crime against those least able to protect themselves, and the need to deter Wojcik from future harm to her family, we conclude that a sentence to probation is inadequate punishment for the crime committed. Hence, we conclude that the district court abused its discretion by sentencing Wojcik to probation and, therefore, set aside the district court's sentence imposed on Wojcik. Under the circumstances, we find that a sentence to imprisonment is appropriate. Consequently, we sentence Wojcik to imprisonment at hard labor in a facility under the direction and jurisdiction of the Nebraska Department of Correctional Services for a term of 20 months to 5 years, with credit for Wojcik's custodial time, if any, spent during pendency of the final disposition of this cause.

The State has convinced us that Wojcik's sentence is too lenient, which it was; therefore, we have corrected the sentence imposed on Wojcik. Much of the information which we have examined concerning Wojcik's sentence is contained in the presentence report. One might reasonably expect that a court will consider relevant information contained in the presentence report, whether a matter for the sentencing court or an appellate court reviewing the sentence imposed. In Wojcik's case, the presentence report consists of photographs and 350 pages offered in a looseleaf edition of unnumbered pages. The "PSR" was secured only by a thin rubberband, which broke, causing a cascade of papers and no small uncertainty regarding the proper sequence of the material reassembled for future use. In any event, perhaps some of the facts, buried in the presentence report, escaped the district court's detection, which is understandable in view of the disarray in which the presentence report came before the district court and us.

In preparing its brief, the State is required to observe the rule:

The statement of facts shall be made in narrative form, and shall consist of so much of the substance of the record as is necessary to present the case. Each and every recitation of fact, whether in the statement of facts or elsewhere in the brief, shall be annotated to the record . . . .

Neb. Ct. R. of Prac. 9D(1)f (rev. 1991). The State has

disregarded the preceding rule. Although we are not required to search through the record to locate recitations of fact unannotated to the record, see *State v. Biernacki*, 237 Neb. 215, 465 N.W.2d 732 (1991), nevertheless, we have examined the record in Wojcik's case to ascertain the circumstances bearing on the claim that Wojcik's sentence is too lenient. Also, we point out that on November 1, 1990, at instruction from this court, Nebraska probation officers were directed that every presentence report shall consist of pagination numbered consecutively to facilitate examination and use of the report by a sentencing court and an appellate court as well. The presentence report in Wojcik's case was submitted on February 4, 1991, 3 months after issuance of the directive concerning pagination of every presentence report. Nevertheless, it is counsel's responsibility to prepare a brief in conformity with the rules of this court. If carrying out that responsibility requires some communication between counsel and those who prepare the record, including a PSR, for appellate review, then, as an admonition to be taken seriously, we suggest such communication. A word to the wise is sufficient.

SENTENCE MODIFIED.