STATE OF NEBRASKA, APPELLANT, V. DAVID R. RITTENHOUSE, APPELLEE.

510 N.W.2d 336

Filed March 30, 1993.   No. A-92-714.

Mark J. Young, Deputy Hall County Attorney, for appellant.

Jerry J. Fogarty, Deputy Hall County Public Defender, for appellee.

HANNON, IRWIN, and MILLER-LERMAN, Judges.

IRWIN, Judge.

Pursuant to Neb. Rev. Stat. § 29-2320 (Cum. Supp. 1992), the county attorney for Hall County appeals the sentence imposed on David R. Rittenhouse, claiming that the sentence is excessively lenient. This statute authorizes a county attorney to

appeal a sentence imposed upon a defendant if the county attorney reasonably believes, based on all the facts and circumstances of the particular case, that the sentence is excessively lenient. The sole question to be answered is whether the sentence imposed in this case is excessively lenient and should therefore be modified. We have reviewed the record and, based upon all the facts and circumstances of this case, determine that the sentence imposed is not excessively lenient, and for that reason, we affirm the sentence.

On June 18, 1992, Rittenhouse was found guilty by a jury of assault in the first degree. Neb. Rev. Stat. § 28-308 (Reissue 1989). Assault in the first degree is a Class III felony and is punishable by a maximum of 20 years' imprisonment, a $25,000 fine, or both. The minimum sentence is 1 year's imprisonment. A presentence investigation was completed prior to the sentencing hearing held on July 23, 1992. Rittenhouse was sentenced to the custody of the Department of Correctional Services for a term of not less than 1 nor more than 2 years' imprisonment.

## FACTUAL BACKGROUND

A chronicle of the facts is necessary in order to make the examination of the issue presented to us by this appeal. The record reveals that on July 1, 1991, Terrie Stangler left her 5-month-old son, Christopher, and her two other sons in the care of Sherry Elson and David R. Rittenhouse. Elson and Rittenhouse had babysat for Stangler on many occasions prior to this. Stangler returned 7 days later for the children. Stangler and her children went home, and the children napped for a few hours. After awakening, Stangler noticed bruises on Christopher's "rear end." She immediately took him to St. Francis Hospital for examination.

Dr. Karen Higgins, a pediatrician, examined Christopher and diagnosed that he had a broken right clavicle and broken right ankle. She described them as "clean breaks," which were in "very good alignment [and she] felt that just leaving him as was, for the leg, was appropriate, since the child was not walking . . . and a clavicular collar was used for the clavicle, but [was not used] for any length of time because he was doing

well." Christopher also had bruises on his buttocks, scrotum, and penis. Dr. Higgins found two small lesions that appeared to be burns or abrasions on Christopher's chest. Also found were "long slender red marks" on Christopher's trunk, which Dr. Higgins testified looked worse in the photograph than they actually were.

Dr. Higgins opined that the injuries were the result of physical abuse, and it was likely that they were caused by an adult. She was also questioned by the prosecutor if a child "of Christopher's age" were "struck in the trunk or in the genitalia," would there be a risk of serious internal injury. This was apparently asked since an element of assault in the first degree is that the assault cause serious bodily injury. Serious bodily injury is defined in Neb. Rev. Stat. § 28-109(20) (Reissue 1989) as follows: "Serious bodily injury shall mean bodily injury which involves a substantial risk of death, or which involves substantial risk of serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body."

The dialog regarding this question is as follows:

Q. Doctor, if a child of Christopher's age on July 7, 1991, is struck in the trunk or in the genitalia, is there a risk of a serious internal injury?

A. Anytime a child is struck of any age, there is always the risk of internal injury, yes.

Q. Why would that be?

A. Just because, especially in the abdominal area, the liver and the spleen are particularly large for the size of the child and could easily rupture and, also, just hematomas can occur to the intestinal walls themselves.

Q. What's a hematoma?

A. I'm sorry. A broken blood vessel.

Q. And if a hematoma occurs in the intestinal walls, what would happen?

A. One possibility would just simply be the bowels would stop working and not function normally. Be very very unusual for a bowel to actually rupture.

Det. Roger Philbeck, of the Grand Island Police Department, testified that on July 15, 1991, he interviewed

Rittenhouse regarding the suspected abuse. Rittenhouse denied causing any such injuries. Philbeck reinterviewed Rittenhouse on August 30. Rittenhouse initially continued his denials. However, during this second interview, he admitted that he had been trying to control Christopher while changing his diaper and grabbed the infant by the leg, possibly lifting him into the air. He also admitted striking the infant four times with enough force "to hurt an adult."

At trial, Rittenhouse claimed he did not strike Christopher hard enough to cause injury, but only spanked him four times, and protested that any injuries were the result of an accidental fall.

Rittenhouse was convicted by a jury of assault in the first degree. At the sentencing hearing, Rittenhouse denied causing the injuries. The court found that Rittenhouse was not a candidate for probation and sentenced him to be imprisoned for not less than 1 year nor more than 2 years.

## STANDARD OF REVIEW

When the State, pursuant to § 29-2320, appeals and claims that a sentence imposed on a defendant is excessively lenient, the standard of review is whether the sentencing court abused its discretion in the sentence imposed. *State v. Wojcik*, 238 Neb. 863, 472 N.W.2d 732 (1991).

## RITTENHOUSE'S SENTENCE

As a Class III felony, assault in the first degree is punishable by a maximum of 20 years' imprisonment, a $25,000 fine, or both such imprisonment and fine. There is a statutory minimum penalty of 1 year's imprisonment upon conviction.

Another possible sentence statutorily available to the sentencing court was probation, pursuant to Neb. Rev. Stat. § 29-2260 (Reissue 1989). Section 29-2260 states:

(2) . . . [T]he court may withhold sentence of imprisonment unless, having regard to the nature and circumstances of the crime and the history, character, and condition of the offender, the court finds that imprisonment of the offender is necessary for protection of the public because:

(a) The risk is substantial that during the period of

probation the offender will engage in additional criminal conduct;

(b) The offender is in need of correctional treatment that can be provided most effectively by commitment to a correctional facility; or

(c) A lesser sentence will depreciate the seriousness of the offender's crime or promote disrespect for law.

After the court sentenced Rittenhouse to an indeterminate sentence of 1 to 2 years' imprisonment, the State appealed, claiming that the sentence was excessively lenient.

## CLAIM OF EXCESSIVELY LENIENT SENTENCE

Neb. Rev. Stat. § 29-2322 (Cum. Supp. 1992) provides that when the State has appealed and claims that a sentence is excessively lenient,

the appellate court, upon a review of the record, shall determine whether the sentence imposed is excessively lenient, having regard for:

(1) The nature and circumstances of the offense;

(2) The history and characteristics of the defendant;

(3) The need for the sentence imposed:

(a) To afford adequate deterrence to criminal conduct;

(b) To protect the public from further crimes of the defendant;

(c) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and

(d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and

(4) Any other matters appearing in the record which the appellate court shall deem pertinent.

Regarding possible dispositions of the State's appeal based on a claim of excessively lenient sentence, Neb. Rev. Stat. § 29-2323 (Cum. Supp. 1992) provides:

Upon consideration of the criteria enumerated in section 29-2322, the appellate court shall:

(1) If it determines that the sentence imposed is excessively lenient, set aside the sentence, and:

(a) Remand the case for imposition of a greater sentence;

(b) Remand the case for further sentencing proceedings; or

(c) Impose a greater sentence; or

(2) If it determines that the sentence imposed is not excessively lenient, affirm the sentence.

The crime of child abuse is one that tugs especially hard at the heart of any decent human being. A defenseless, helpless 5-month-old person deserves the utmost protection from society. The criminal law attempts to provide this protection through criminal sanctions contained within the child abuse and assault statutes. Regrettably, the criminal justice system can move to action only after an injury has occurred and can do nothing directly to change the immediate damage suffered by the victim in such cases. Punishment of the perpetrator is something that the legal system is particularly able to dispense. However, such punishments must conform to the existing law regarding the imposition of criminal sentences and should not be excessively lenient or harsh. See §§ 29-2260 and 29-2322.

The State relies heavily on *State v. Wojcik*, 238 Neb. 863, 472 N.W.2d 732 (1991), in arguing that the sentence imposed by the trial court should be determined to be excessively lenient. In *Wojcik*, the defendant was convicted of child abuse, a Class IV felony. The evidence in *Wojcik* showed that the defendant had abused her child by striking or shaking him and failing to promptly seek medical attention. The abused child required surgery and hospitalization.

The Nebraska Supreme Court reversed the sentence of probation and imposed the maximum sentence of imprisonment, 20 months to 5 years. Wojcik had been previously convicted of conspiracy to commit murder and had had previous contacts with law enforcement about child abuse complaints. The Supreme Court found the sentence to be excessively lenient, stating:

Therefore, having considered the nature of the offense and its circumstances, Wojcik's character and history of violence, the seriousness of child abuse as a crime against those least able to protect themselves, and the need to

deter Wojcik from future harm to her family, we conclude that a sentence to probation is inadequate punishment for the crime committed.

*Id.* at 870-71, 472 N.W.2d at 736.

Unlike the defendant in *Wojcik*, Rittenhouse had never been convicted of a crime of violence in the past. This is conceded by the State. Rittenhouse has no prior felony convictions, unlike Wojcik. Rittenhouse successfully completed probation on his only probationary sentence.

In *Wojcik*, the defendant knew of the child's injury and did not obtain medical treatment for 10 days, even missing a scheduled doctor's appointment. In the present case, the child's injuries were not entirely obvious, and even Christopher's mother was not aware of the fractures until a medical examination was conducted.

One of the most salient distinctions between Wojcik and Rittenhouse is the contrast of the past records regarding abusing children and the likelihood of a replay of such behavior. Wojcik had relinquished her 3-year-old son in 1976, rather than " 'going through the hassle' " of a child abuse charge. *Id.* at 865, 472 N.W.2d at 733. In 1989, she had hit her 5-year-old daughter with a 2 by 4, struck her in the eye with a closed fist, and threw her against a wall. She then abused her son by shaking him so hard that he suffered serious bodily injury, which abuse ultimately resulted in her conviction.

In the case before us, there was only one known instance of abusive behavior toward a child, and that is the present case. This is despite the fact that Rittenhouse has a long history of babysitting and contact with children, both with Elson and in a day-care center.

An examination of the record also uncovers remarks by the sentencing judge which provide insight into his thought process regarding the appropriate sentence to impose:

THE COURT: Frankly, whenever I have a sentence in which there has been no prior felonies, I try to figure out a way to give probation. That's the first thing I try to do.

In this case, I feel probation would not be appropriate for these reasons:

First, we have the nature of the victim, a five month old

child, you know, without any ability to defend themselves, and, second, we have the fact that the defendant would have no purpose on probation since he does not feel that he was responsible for the injuries that were caused, which are obvious by the photographs and the evidence.

In this case, I cannot, again, look at the case and say, "Well, you didn't do it." The jury has already determined that fact. That's already been done.

The injury was not just a property damage, but a serious personal injury. I think that the — all of us recognize that — the nature of people to try to protect our children, and any time a person does an act, which the jury has determined that you did, which was not only a serious bodily injury, but almost an uncontrolled anger against a small child, anything less than incarceration would depreciate the seriousness of the offense, and because of your lack of acceptance of the fault and the responsibility you would not be a proper subject for probation.

On the other hand, I don't feel that — I don't feel a long period of incarceration is appropriate, this being your first serious offense.

It is therefore the judgment of the Court that the defendant, David Rittenhouse, is sentenced to the department of corrections for a term of not less than one nor more than two years. Order of commitment to issue.

When a trial judge sentences a person, he or she must do what is lawfully correct, even though the sentence may incur criticism. Such a judge also invites possible reversal of his or her sentence determination by an appellate court, pursuant to the "excessively lenient" appeal statute, § 29-2320. *State v. Jallen*, 218 Neb. 882, 359 N.W.2d 816 (1984).

In an appeal by the State that a sentence is excessively lenient, the Supreme Court stated in *State v. Winsley*, 223 Neb. 788, 792-93, 393 N.W.2d 723, 726 (1986): "These cases of necessity must be reviewed by us on a case-by-case basis. As a result, therefore, we are unable to set out with exactness any greater standards than those prescribed by the provisions of § 29-2322."

We have reviewed the record and determine that the trial court did not abuse its discretion. In view of the seriousness of the crime, this court may have imposed a different sentence, but such is not the standard for reviewing criminal sentences. The judgment of the trial court is affirmed.

AFFIRMED.