STATE OF NEBRASKA, APPELLANT, V.
VERMA J. HARRISON, APPELLEE.
583 N.W.2d 62

Filed July 14, 1998.   No. A-97-1152.

Paul B. Schaub, Cheyenne County Attorney, for appellant.

James R. Mowbray and Robin W. Hadfield, of Nebraska Commission on Public Advocacy, for appellee.

MILLER-LERMAN, Chief Judge, and SIEVERS and MUES, Judges.

MILLER-LERMAN, Chief Judge.

The State brings this appeal to this court pursuant to Neb. Rev. Stat. § 29-2320 (Reissue 1995). The State claims that the two sentences of consecutive 5-year probations imposed by the district court for Cheyenne County on Verma J. Harrison as a result of her convictions for two counts of motor vehicle homicide in connection with an accident following a night of drinking is excessively lenient. For the reasons recited below, we conclude that the sentences are excessively lenient, vacate the sentences, and remand the cause for imposition of two sentences of 20 months' to 5 years' incarceration to be served consecutively, pursuant to Neb. Rev. Stat. § 29-2323(1)(a) (Reissue 1995).

## BACKGROUND

The two victims killed in this motor vehicle accident were Janice Nicolich (Janice), age 60, and her granddaughter, Robyn Griffiths (Robyn), age 11. The accident occurred on June 28, 1996, at approximately 7:30 a.m. on Interstate 80 near Sidney, Nebraska. The circumstances of this incident were as follows:

Joseph Nicolich (Nicolich), age 65, his wife, Janice, and their granddaughter, Robyn, were on vacation en route to the Nicolichs' son's wedding in Salt Lake City, Utah. The accident occurred 5.5 miles east and 1 mile south of the city of Sidney, on I-80 in Cheyenne County, Nebraska. Just prior to impact, Nicolich, driving west on I-80, noticed children and a broken-down vehicle on the roadside. He steered his vehicle onto the shoulder and slowed it to about 25 miles per hour. A second vehicle, driven by Harrison, followed the Nicolich vehicle onto the shoulder at about 70 miles per hour. Harrison's vehicle col-

lided into the rear section of the Nicolich van, causing the Nicolich vehicle to propel forward, rotate, and land in the median between the eastbound and westbound Interstate lanes.

Harrison exited and walked away from her vehicle. Robyn died as a result of a massive blunt trauma to the head. One of the witnesses, Greg Stovall, noted that after seeing the crash, he and his wife stopped and went over to the Nicolich vehicle where they observed a "woman in front seat [Janice] died while my wife and myself were there." Janice died from a blunt trauma with probable cranial hemorrhage. There is evidence that the force of the impact was such that Janice's lapbelt, shoulder restraints, and deployed air bag were unable to save her. Nicolich was injured in the crash.

The persons involved in the accident were transported by ambulance to the Sidney Memorial Health Center. Trooper Ronald Kissler of the Nebraska State Patrol arrived there and was told by members of the ambulance crew that they detected the smell of alcohol emanating from Harrison. Kissler searched for Harrison and located her in a room where she was undergoing a CAT scan. Kissler detected a strong odor of alcohol coming from Harrison. He then held a preliminary breath testing unit approximately 3 inches from Harrison's mouth and took a reading as she exhaled. The reading showed a substantial amount of alcohol. Kissler then asked Harrison if she had had anything to drink that day. At first, she said she had not, but paused a few seconds, and then said that she had been drinking beer and mixed drinks in Ogallala, Nebraska, until about 3 a.m. Harrison further stated that she had slept a couple of hours in a motel and was in a hurry to get back to Cheyenne, Wyoming.

At 9:52 a.m. on June 28, 1996, a registered nurse drew blood from Harrison. The sample was sent to the Nebraska State Patrol laboratory for analysis. At the preliminary hearing contained in the presentence report, Kissler stated that the results came back at .175 grams of alcohol per 100 milliliters of blood. At the arraignment hearing of August 5, 1997, as a factual basis for the plea, the prosecutor stated that the results of Harrison's blood test "revealed a body fluid alcohol content of point one five (.15) grams of alcohol per one hundred (100) milliliters of her blood."

At approximately 11 a.m. on June 28, 1996, Trooper Mike Gaudreault of the Nebraska State Patrol spoke to Harrison about the accident. Harrison stated she "thought she had fallen asleep" at the wheel. She recounted events leading up to the accident. Harrison said she had awakened at around 6:30 a.m. on June 27. Later that day, at approximately 2 p.m., Harrison and a friend drove from Cheyenne to Ogallala. Upon arriving in Ogallala, they decided to stay the night and go out dancing. At 10 p.m. on June 27, they went out to a lounge to dance and drink with some friends. Harrison stated that she consumed seven or eight beers and about three or four mixed drinks and quit drinking at about 3 a.m. Harrison stated that she went to sleep in a motel in Ogallala at about 4 a.m. Harrison stated that at 7 a.m. on June 28, she left Ogallala for Cheyenne. She indicated that she wanted to get home to meet with a boyfriend to leave on time for a vacation to New York the same day. According to Gaudreault, Harrison stated, "I pushed it to get home."

Gaudreault then asked Harrison for specific information leading up to the crash. Harrison said she was driving westbound on I-80, following a gray van at approximately one car length. The gray van proved to be the Nicolich vehicle. Harrison was traveling at about 70 miles per hour. She passed a broken-down vehicle, then heard her tires on the paved shoulder. She looked up to see the gray van on the shoulder in front of her and turned her steering wheel to the right to try to avoid a collision. She did not remember anything else about the crash.

Gaudreault asked Nicolich for information about the crash. Nicolich said he was traveling to Utah with his wife, Janice, and granddaughter, Robyn. He was driving westbound on I-80 at approximately 75 miles per hour. He saw several small children near a "broke down motorist" and then steered onto the shoulder. He had decelerated and was traveling at about 25 miles per hour when his vehicle was struck from behind by another vehicle. He said he did not know where the other vehicle had come from, since he had not seen any vehicles behind him when he began to pull over. He does not remember anything else about the crash.

Trooper George F. Lynch of the Nebraska State Patrol, a certified accident reconstructionist, testified at the preliminary hearing. He determined that the Nicolich vehicle was com-

pletely on the shoulder at the time of impact, traveling at a rate of approximately 25 miles per hour. Harrison was driving on the shoulder at the time of the impact at a rate of 65 to 70 miles per hour. Lynch stated that contrary to Harrison's assertions, Harrison did not attempt to avoid a collision because "[t]his type of accident is consistent with a vehicle just going in a straight line at 14 degrees to the struck vehicle."

On July 31, 1996, local mechanic Rodger Sauder conducted a mechanical inspection of Harrison's vehicle. The vehicle was in the same condition as it was the day of the crash. Sauder did not detect any mechanical problems that might have contributed to an accident.

On September 10, 1996, Gaudreault contacted the motels in the area of I-80 at the Ogallala interchange to determine if Harrison had been registered during the time period of June 26, 27, or 28. Each of the motels reported no record of Harrison registered on said dates.

At the hospital following the accident, Harrison was advised by Kissler that she was under arrest for driving under the influence. An evidence form contained in the presentence report lists the following items found in Harrison's vehicle: three 12-ounce empty cans of beer and one shot glass. A signed postarrest chemical test advisement form is found in the presentence report as well as a waiver of *Miranda* rights, which is not signed by Harrison.

An information was filed on August 7, 1996, charging Harrison with two counts of manslaughter, Class III felonies. An amended information appears in the presentence report with a typed date of October 1996, charging Harrison with two counts of manslaughter and assault in the third degree, a Class I misdemeanor. This document does not bear a filing stamp. The controlling amended information filed July 3, 1997, to which Harrison pled guilty on August 5, charges Harrison with two counts of motor vehicle homicide, Class IV felonies. Class IV felonies are punishable by 0 to 5 years' incarceration, a $10,000 fine, or both. Neb. Rev. Stat. § 28-105 (Reissue 1995). For the sake of completeness, we note that § 28-105 has now been amended to provide a minimum punishment of 6 months' imprisonment. That change became operative on July 1, 1998,

and does not impact this appeal. Following acceptance of the pleas, the court ordered a presentence investigation.

The presentence report disclosed that Harrison is 32 years old, with three dependents. She graduated from high school and has taken courses at a community college. She has been employed at Sears, a jewelry store, and as a hostess at a restaurant in Cheyenne.

Her prior record includes a fine for child neglect in December 1992, which she attributes to alcohol use. She was convicted of public intoxication in December 1994.

In October 1995, she was convicted of driving under the influence of alcohol in Cheyenne. She was sentenced to 3 months' license suspension, 10 days in jail (time suspended), a $350 fine, and costs, and she was ordered to pay $50 to the victim compensation fund. Harrison reported to the probation officer preparing the presentence report that she stated to the Wyoming judge at sentencing on the prior driving under the influence conviction that " 'I am thankful I did not kill anybody.' " Harrison participated in an 8-hour alcohol abuse course in connection with the Wyoming driving under the influence conviction. However, she did not complete the course because she felt they treated her " 'like a criminal' " and described the class as scary. The presentence report states that since the current offenses, Harrison has participated in a driving under the influence offender program.

The presentence report discloses that Harrison first began drinking regularly at 15, was drunk two times per week in high school, blacked out one time per month in high school, and consumed alcohol every day after graduating from high school. She reported that she had to drink 12 beers to reach a drunken state. In 1995, prior to her Wyoming driving under the influence offense, she used hard alcohol, preferring a pint of " 'hot damn schnapps' " each day.

The presentence report shows that Dr. Kenneth A. Pettine reported on August 24, 1993, in connection with an evaluation of Harrison, that Harrison denied excessive use of alcohol. As noted above, she failed to complete the 8-hour alcohol abuse course following her conviction in Wyoming for driving under the influence. However, in contrast to the foregoing denials, on

August 31, 1997, the instructor at the "Action DUI Offender Program" in Cheyenne stated that Harrison acknowledged her alcoholism and reported no alcohol or drug use since the June 1996 accident, which is the subject of this appeal.

Following receipt of the presentence report, the district court sentenced Harrison on October 28, 1997, to two consecutive terms of 5 years' probation on the counts of motor vehicle homicide. In sentencing Harrison, the court reviewed the "excellent" presentence report and noted the many letters contained therein. There were letters suggesting the maximum term of imprisonment submitted by family and friends of the victims. There were letters of support for Harrison. The parents of the victim Robyn wrote a lengthy letter of forgiveness, which was read into the record at sentencing. Nicolich wrote a three-page letter dated September 21, 1997, doubting reports of Harrison's rehabilitation, describing the daily sadness he experiences at the loss of his wife, and further describing his injuries as a result of the collision and his progress in psychiatric care.

At the sentencing hearing, Nicolich appeared and requested that Harrison receive maximum incarceration. He read his letter of September 21, 1997, into the record. A videotape portraying the victims, inter alia, at various family occasions was viewed by the court and is contained in the record on appeal. Harrison spoke and expressed remorse and indicated her intention to dedicate herself to sobriety and helping others. The trial judge stated, inter alia, as follows:

> I am deeply touched by the letter from Mr. and Mrs. Griffiths [parents of the victim Robyn], they express a forgiveness and a relationship with God that is difficult, I think, for most of us to understand. The more understandable emotions are those expressed by other members of the family, which are quite simply, punish her as stringently, as severely as possible. And if I did that, it might give them some temporary sense of relief or some sense that our loved ones lives have been vindicated to some small, small degree.

The trial judge concluded:

> Were it not for the letter from Mr. and Mrs. Griffiths, I think I would have, beyond a doubt, sentenced you to

prison, but in the face of their expressed forgiveness and their belief in you, Ms. Harrison, which I certainly hope is not in vain, I feel that probation is appropriate in this particular instance.

The trial court sentenced Harrison to 5 years' probation on each count, the sentences to be served consecutively. The conditions of probation subjected Harrison to random drug and alcohol testing, home visitations, and a treatment referral, and it ordered her not to violate the law or consort with individuals who do.

The State appeals.

## ASSIGNMENT OF ERROR

As its assignment of error, the State claims that the district court abused its discretion by rendering excessively lenient sentences.

## STANDARD OF REVIEW

Neb. Rev. Stat. § 29-2322 (Reissue 1995) provides in part that an appellate court, upon a review of the record, shall determine whether a sentence imposed is excessively lenient, having regard for

(1) The nature and circumstances of the offense;

(2) The history and characteristics of the defendant;

(3) The need for the sentence imposed:

(a) To afford adequate deterrence to criminal conduct;

(b) To protect the public from further crimes of the defendant;

(c) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and

(d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and

(4) Any other matters appearing in the record which the appellate court deems pertinent.

In a case where the State maintains that a sentence imposed on a defendant is excessively lenient, the standard of review is whether the sentencing court abused its discretion in the sentence imposed. *State v. Wojcik,* 238 Neb. 863, 472

N.W.2d 732 (1991); *State v. Cotton*, 2 Neb. App. 901, 519 N.W.2d 1 (1994). An appeal in which the State contends that a sentence is excessively lenient must of necessity be reviewed by an appellate court on a case-by-case basis. *State v. Ummel*, 1 Neb. App. 541, 500 N.W.2d 191 (1993).

## ANALYSIS

The State generally claims on appeal that the sentences imposed on Harrison are excessively lenient. The State refers specifically to the criteria set forth in § 29-2322 in urging this court to reverse and vacate Harrison's two consecutive sentences of 5 years' probation. In response, Harrison urges this court to affirm the sentences, claiming that she now faces her alcohol problem, that she is subject to conditions of probation, and that removing her from the home would be detrimental to her dependents. Having reviewed the record in this case and the criteria set out in § 29-2322, we believe that sentences of probation must be said to be excessively lenient.

The nature of the offenses are extremely serious, from both the standpoint of the loss of lives and the injury which the survivor, Nicolich, sustained and from which he still suffers. Moreover, the history and characteristics of Harrison require us to reach a conclusion that sentences of probation are excessively lenient. Harrison was previously given an opportunity to rehabilitate herself in connection with her driving under the influence conviction in Wyoming within the year prior to this crash, but she elected not to take advantage of that opportunity. According to Harrison, she failed to complete the 8-hour alcohol abuse course because they treated her like a criminal and it was scary. The current incident occurred shortly after the foregoing decision of Harrison to perpetuate her denial that she had an alcohol problem involving drinking and driving and to not rehabilitate herself. In this regard, we acknowledge that there is a showing in the presentence report that since the accident involved in this case, Harrison now appreciates the danger that her drinking and driving poses.

Harrison claims on appeal that the public is protected from further crimes which she might commit because she is subject to conditions of probation. The State correctly notes that

Harrison is not subject to intensive supervision, not required to participate in rehabilitative treatment, not required to make restitution or perform community service, not required to have daily contact with the probation officer, and does not have a monitored curfew. The protection of the public from further crimes by Harrison cannot be assured under the conditions of probation now imposed, nor does such a sentence serve as an adequate deterrent to further criminal conduct. Such a sentence does not reflect the seriousness of the offense, nor does it promote respect for the law or provide just punishment for the instant offenses, all factors which we are required to review pursuant to § 29-2322.

In *State v. Winsley*, 223 Neb. 788, 393 N.W.2d 723 (1986), the Nebraska Supreme Court found a sentence excessively lenient and modified a sentence of probation to one of incarceration. In its analysis, the court noted that "[w]e are somewhat impressed in this matter that even the sentencing judge had misgivings about placing [the defendant] on probation." *Id.* at 792, 393 N.W.2d at 726. In the instant case, the district judge was correct in entertaining those misgivings, and indeed, probation should not have been ordered. We are of the opinion that a period of incarceration is required to meet the requirements of a proper sentence under the facts of this case.

It has been stated that cases involving claims of excessively lenient sentences must be reviewed on a case-by-case basis and that as a result, appellate courts are unable to set out with exactness any greater standards than those prescribed by the provisions in § 29-2322. *State v. Winsley, supra.* Nevertheless, an examination of all the factors in this case leads us to the conclusion that the sentences of probation imposed herein were excessively lenient.

The two sentences of 5 years' probation to be served consecutively are, therefore, vacated. Pursuant to § 29-2323(1)(a), this cause is remanded for imposition of two sentences of 20 months' to 5 years' incarceration to be served consecutively and for administration of the proper truth in sentencing advisements.

SENTENCES VACATED, AND CAUSE
REMANDED FOR RESENTENCING.