STATE OF NEBRASKA, APPELLEE, V.
JESSE SPURGIN, APPELLANT.

623 N.W. 2d 644

Filed March 16, 2001. No. S-00-411.

Arthur C. Toogood, Adams County Public Defender, for appellant.

Don Stenberg, Attorney General, and Martin W. Swanson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Jesse Spurgin was charged with three counts of possession of a destructive device. A jury found him guilty on each of the three counts, and he was sentenced to consecutive sentences of 20 months' to 2 years' imprisonment on each count. Spurgin timely appeals.

## SCOPE OF REVIEW

■ Interpretation of a statute presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *State v. Neiss*, 260 Neb. 691, 619 N.W.2d 222 (2000).

■ In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the

absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Myers*, 258 Neb. 300, 603 N.W.2d 378 (1999).

 Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of discretion. *State v. Gutierrez*, 260 Neb. 1008, 620 N.W.2d 738 (2001).

## FACTS

On July 5, 1999, Edna Jones was driving home from work when she noticed two men yelling at each other, one of whom she later identified as Spurgin. She also observed what she thought to be bottles lined up in the middle of the street. As she slowed down, Spurgin approached her with a bottle raised in the air. Jones testified that at the time, she thought Spurgin was going to hit her with the bottle. Spurgin then told Jones to " '[g]et the fuck out of here, Bitch.' " Jones immediately left the area and reported the incident to the Hastings Police Department.

When Officer Robert Bednar arrived at the scene, he noticed three black canisters lined up across the street. Bednar was soon approached by Spurgin, who was carrying what appeared to be a Jack Daniels whiskey bottle. Spurgin told Bednar that he was "pissed off at the world."

Bednar noticed that the bottle Spurgin was holding contained a substance which appeared milky and "chocolatey" and that the substance was oozing out of the bottle. As he escorted Spurgin to the sidewalk, Bednar asked Spurgin to set the bottle on the ground. After Spurgin eventually complied, Bednar was able to do a weapons search. At that time, Bednar discovered a bottle of "sudsy like soap type" material in Spurgin's pants pocket.

By this time, another police officer had arrived and was assisting in the search. As Bednar pulled the bottle from Spurgin's pants pocket, the other officer stated that it looked like a bomb. Spurgin responded, " 'That's right, it's a bomb. It's a bottle bomb. And [so are] those over there.' " Spurgin then pointed to three devices in the street.

Spurgin was arrested and placed in the back of a police car. While in the car, he stated that the items in the street were

"'potato bombs.'" He told the officers, "'Don't move those containers because they've got an ignition device on them and if you throw them they'll explode.'"

Spurgin made additional statements to the police to the effect that he had been kicked out of the military and wanted to get back in and that he thought he would get the military's attention by demonstrating that he was capable of making such devices. Bednar testified that Spurgin stated that he had placed a shotgun shell inside each of the devices and taped a screw to the bottom of the shotgun shell so that when he threw the device and it hit the ground, the shotgun shell would explode the device. He told another officer that he would cooperate by drawing pictures and explaining the design of the devices in detail, along with the contents of the devices.

The police notified various other agencies, including the Nebraska State Patrol. Jud McKinstry, an explosives expert from the State Patrol, supervised the removal of the three devices from the street and three other bottles that were found in a nearby yard. McKinstry transported all six devices to the local landfill. He placed explosive countercharges on the devices and detonated them. McKinstry was unable to determine the contents of the three bottles found in the yard.

With regard to the three glass bottles found in the yard, Spurgin told the police that he was attempting to make mustard gas. Spurgin stated that the devices in the street were designed after "the old potato masher style grenades" from World War II. He told the police to be careful with the devices because if they exploded, anyone in a 10- to 15-meter area would be "hamburger, blind, or possibly dead." Spurgin said he had been designing these devices for about 4 months. He also indicated that previously, in April 1999, he had blown up a device at the old K Mart store outside of Hastings. Two weeks later, he detonated a liquid-style device at a park. Upon further questioning by Det. Paul Weber, Spurgin stated that after he placed the devices in the street, he was yelling and screaming that he had a bomb or hand grenade and that he was "tired of people talking shit about him in Hastings."

Spurgin was charged with three separate counts of possession of a destructive device, and following a jury trial, he was found

guilty on each of the three counts. A motion for new trial was overruled, and Spurgin was sentenced to consecutive sentences of 20 months' to 2 years' imprisonment. Spurgin timely appealed his convictions and sentences.

## ASSIGNMENTS OF ERROR

Spurgin assigns as error that the district court erred (1) in determining that one simultaneous act involving possession of multiple items at the same place constitutes more than one offense, (2) in imposing consecutive sentences for one simultaneous act, (3) in failing to grant his motion for a directed verdict at the close of all the evidence, (4) in failing to grant his motion for a new trial, (5) in refusing to place him on probation, and (6) in imposing sentences which are excessive and disproportionate to the severity of the offense.

## ANALYSIS

Spurgin first argues that charging him with multiple counts violates the Double Jeopardy Clause against multiple punishments for the same offense imposed in a single proceeding. Spurgin claims that possession of the three devices constituted only one single criminal act and that the Nebraska Criminal Code does not define whether possession of each individual device constituted a separate offense.

Neb. Rev. Stat. § 28-1220 (Reissue 1995) states: "(1) Any person who has in his possession a destructive device, as defined in subdivision (7) of section 28-1213, commits the offense of possession of a destructive device. . . . (3) Possession of a destructive device is a Class IV felony."

Neb. Rev. Stat. § 28-1213 (Reissue 1995) provides in relevant part:

> (7) Destructive devices shall mean:
>
> (a) Any explosive, incendiary, or poison gas (i) bomb, (ii) grenade . . . the primary or common purpose of which is to explode and to be used as a weapon against any person or property; or
>
> (b) Any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subdivision (7)(a) of this section from which a destructive device may be readily assembled.

Spurgin argues that charging him with three separate counts is similar to charging a shoplifter with three counts of shoplifting where three items have been taken from the same store at the same time, as was the case in *State v. Garza*, 241 Neb. 256, 487 N.W.2d 551 (1992). In *Garza*, we held that the act of theft involving multiple items of property stolen simultaneously from the same place constituted but one offense. Spurgin claims that under this rationale, possessing three devices in violation of § 28-1220 constitutes only one offense.

■ Interpretation of a statute presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *State v. Neiss*, 260 Neb. 691, 619 N.W.2d 222 (2000). In reading a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *State v. Bottolfson*, 259 Neb. 470, 610 N.W.2d 378 (2000).

We conclude that under a plain reading of § 28-1220, possession of each destructive device constitutes a separate offense. Section 28-1220 also states that possession of a single destructive device is a Class IV felony. Therefore, possession of three destructive devices would constitute three separate offenses.

Our conclusion is further supported by the fact that Spurgin constructed each device in an individual and unique manner. Each of the devices contained different elements: one contained flour, another salt and chlorine, and another wheat and salt. The devices also varied in size. Furthermore, the fact that the devices were discovered at the same time and location does not equate with the commission of only one offense.

Spurgin next argues that the district court erred in imposing consecutive sentences for one simultaneous act, including possession of multiple similar items at the same place. Spurgin claims that the imposition of three separate punishments violates the Double Jeopardy Clause with regard to multiple punishments for the same offense in a single proceeding.

■ The Double Jeopardy Clauses of both the U.S. Constitution and the Nebraska Constitution protect against three distinct abuses: (1) a second prosecution for the same offense

after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *State v. McCracken*, 260 Neb. 234, 615 N.W.2d 902 (2000). The Double Jeopardy Clause precludes multiple punishments for the same offense imposed in a single proceeding. *State v. McBride*, 252 Neb. 866, 567 N.W.2d 136 (1997). A determination of whether multiple convictions in a single trial lead to multiple punishments depends on whether the Legislature, when designating the criminal statutory scheme, intended that cumulative sentences be applied for conviction on such offenses. See *id.* Since each individual device constituted a new and separate offense, punishment for each separate offense does not offend the Double Jeopardy Clause. Therefore, we conclude that Spurgin's argument regarding double jeopardy is without merit.

Next, Spurgin argues that the evidence was so lacking in probative force that his motion for a directed verdict should have been granted at the close of all the evidence. A verdict in a criminal case must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support the verdict. *State v. Earl*, 252 Neb. 127, 560 N.W.2d 491 (1997). In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Myers*, 258 Neb. 300, 603 N.W.2d 378 (1999).

In a criminal case, a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996). If there is any evidence which will sustain a finding for the party against whom a motion for directed verdict is made, the case may not be decided as a matter of law, and a verdict may not be directed. *State v. Nissen*, 252 Neb. 51, 560 N.W.2d 157 (1997).

Spurgin admitted to the police that the items in his possession were bombs or grenades. Although Spurgin argues that he did

not want to hurt anyone, the issue is for what purpose or intent were the devices constructed. This was an issue of fact for the jury. At the time of the incident, Spurgin was yelling and screaming that he was "tired of people talking shit about him in Hastings." He also explained to one of the police officers that he was "pissed off at the world."

The elements of § 28-1220 require that a person be in possession of a destructive device as defined in § 28-1213(7), which states that the primary or common purpose of the device is "to explode and to be used as a weapon against any person or property." There was sufficient evidence to sustain Spurgin's convictions on these three counts. The evidence, viewed and construed most favorably to the State, was sufficient to support Spurgin's convictions.

Spurgin's fourth assignment of error is that the district court erred in failing to grant his motion for new trial. However, Spurgin's brief devotes no argument to this issue. Errors that are assigned but not argued will not be addressed by an appellate court. *State v. Silvers*, 260 Neb. 831, 620 N.W.2d 73 (2000). Accordingly, we do not address this assignment of error.

Finally, Spurgin argues that the district court abused its discretion in imposing consecutive sentences of 20 months' to 2 years' imprisonment and in refusing to place him on probation. Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of discretion. *State v. Gutierrez*, 260 Neb. 1008, 620 N.W.2d 738 (2001). An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *Id.* Spurgin's sentences of 20 months' to 2 years' imprisonment are well within the statutory limits of Neb. Rev. Stat. § 28-105 (Cum. Supp. 2000), which provides for a maximum of 5 years' imprisonment on each count for a Class IV felony.

Whether the sentence imposed is probation or incarceration is a matter within the discretion of the trial court, whose judgment denying probation will be upheld in the absence of an abuse of discretion. *State v. Crowdell*, 241 Neb. 216, 487 N.W.2d 273 (1992). Here, Spurgin's presentence investigation report indicated that he was not a suitable candidate for proba-

tion. The recommendation was based on Spurgin's prior record, which showed a substantial risk that Spurgin would engage in additional criminal conduct during a period of probation. The presentence investigation report also indicated that a lesser sentence would depreciate the seriousness of the crime and promote disrespect for the law.

The district court also concluded that Spurgin was not a suitable candidate for probation and that to place him on probation would promote disrespect for the law. The court was particularly disturbed by a letter in the presentence report in which Spurgin stated that he could not promise that he would never construct another such device. We conclude that the sentence imposed was not an abuse of discretion, and Spurgin's argument has no merit.

## CONCLUSION

For the reasons set forth herein, we affirm the convictions and sentences of the district court.

AFFIRMED.