STATE OF NEBRASKA, APPELLANT, V.
CRAIG J. HAMIK, APPELLEE.
635 N.W.2d 123

Filed November 2, 2001.   No. S-00-787.

762

Andrew J. McMullen, Buffalo County Attorney, Melodie Turner Bellamy, and Melanie Young for appellant.

Clarence E. Mock and Michael J. Tasset, of Johnson and Mock, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Following a jury trial in the district court for Buffalo County, Craig J. Hamik was convicted of first degree sexual assault, a Class II felony, and sentenced to 5 years' probation to be served consecutively to a sentence of incarceration imposed in another case. Pursuant to Neb. Rev. Stat. § 29-2320 (Reissue 1995), the State has appealed on grounds that the sentence is excessively lenient, both factually and as a matter of law. We moved the case to our docket on our own motion pursuant to our authority to regulate the dockets of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995). The issues presented for our review are whether the district court was prohibited by Neb. Rev. Stat. § 28-105(4) (Reissue 1995) from placing Hamik on probation and, if not, whether the sentence imposed was excessively lenient.

## BACKGROUND

Hamik was charged with first degree sexual assault in violation of Neb. Rev. Stat. § 28-319(1) (Reissue 1995). At trial, a female under the age of 16 testified that Hamik, who had been her neighbor, touched and digitally penetrated her on multiple occasions while she was present in his home for the purpose of playing with his children. Hamik testified in his own defense and denied that he ever touched the girl. The jury returned a verdict of guilty, upon which the district court entered a judgment of conviction on May 9, 2000.

In June 1999, prior to the trial of this case, Hamik was charged with two counts of sexual assault of a child in violation

of Neb. Rev. Stat. § 28-320.01 (Reissue 1995), a Class IV felony. He initially entered pleas of not guilty to both counts. At a hearing on July 17, 2000, Hamik entered a guilty plea to one of these counts as part of a plea agreement. In return for the plea, the State agreed to dismiss the other pending count and to recommend that any sentence imposed for the Class IV felony be concurrent with the sentence to be imposed in this case. The district court accepted the plea and entered a judgment of conviction on the Class IV felony. With the agreement of the parties, the district court then conducted a sentencing hearing and imposed sentences in both cases. Because it is central to the issues presented in this appeal, we quote verbatim the reasoning of the district judge from the record of the sentencing hearing:

Mr. Hamik, the duty of the Court at this time is to impose a sentence as to each of these particular matters. And frankly the status of this particular case does create a great deal of problems for the Court as well as it has for the State, yourself, and the victims. There is nothing that this Court can do that is going to make everything perfect for everybody in this case. There's certainly no way no matter how much we wish we could that we can bring closure of this incident, that we can bring peace of mind, that we can return the victims and their families to normalcy. That is not possible. The effect of what has occurred will bother those persons and those families for a great number of years to come the same as it will be a destructive influence and bothersome to your own family and the people within it.

Mr. Mock has pointed out that the Legislature envisioned offenses that had a great latitude in punishment because the nature and the type of the offenses that are involved have a great latitude in the degree of violence and the degree of harm that is occasioned. Whenever the Legislature basically says that the Court has a period of 1 to 50 years to play with in sentencing an individual, the suggestion is that some cases are right for one-year sentence and some cases are for 50 and many cases are for in between. And it's the discretion of the Court to try to find the right place to put each individual case.

One of the things that we do not do in sentencing in this country is to sentence an individual on a peremptory basis. That is, a sentence that is going to stop you from committing a crime in the future. That is certainly antagonistic to our system of justice that thinks that people ought to commit the crimes before they're punished for them.

Mr. Mock also pointed out that there was quite a bit of information contained in the presentence report that he hoped that the Court would not pay attention to. It's sad because I pay attention to that information, especially the information that relates to activities by other people in your family which seem to be at best harassing and irritating toward the victim and her family. I pay attention to it not because it in any way affects you because you're not doing those things. It doesn't — I don't pay attention to it because you should receive [a] more harsher penalty because of what has occurred. I pay attention to it because I think better of the people in this community than they may have in this particular way.

I also note, Mr. Hamik, that there is a difference in your case than some of the other cases that we see. First of all, I'm not so sure that these are necessarily better moments, but they are different.

My opinion from the evidence that we've heard and what we've seen in this case is that you are a predator and you prey upon the trust of young girls, and that this is something that has happened in the past and you've either put them in a position of tolerating the advances because they're having fun driving the car or you put them in a position where they have a great deal of trust and affection and you take advantage of their inability to know how to properly express themselves. None of that is forgiven because you are the adult, they are the children. Our laws in this state are designed to protect the children and to put an affirmative obligation on each and every one of us to protect the children of the community. And when we violate that obligation, we violate that trust, this is where we end up.

You are not out actively soliciting and trying to ensnare these people. You sort of wait until they're almost prover-

bally [sic] dropped in your lap. As I said, it may not make it better but there is a difference in the type of person that is actively soliciting and trying to find the victims. Yours is the type of situation that should well be put in check. If there's any validity whatsoever to our Sex Offender Registration Act because the community will know — anyone who doesn't know you will know that they may not wish to trust you with the well being of their children.

Ms. Young has suggested that the Court sentence you to what would be effectively a period of ten years of incarceration. I will tell you that if I sentenced [you] to ten years of incarceration, you would be out free from your commitments within five years. You will have spent that five years accomplishing little if anything through the auspices of the State of Nebraska Department of Corrections. Partially because their program is difficult to get into, it's questionably effective. More importantly as you stand at this point, I don't see an attitude on your part that suggests that you think it's necessary to make changes in yourself in your life. I will suggest to you from what I have seen in the court I have sat through the trial and what I have read, that you do need to reevaluate yourself, you do need to reevaluate your personality, you do need to reevaluate your relationship to other people and you do need to bring your life under control. And no matter how many people love you in your family, the fact that they will not say that to you does not mean that it doesn't need to be done.

Mr. Hamik, the offenses that occurred on the scale of sexual assault offenses and I say this with a great deal of reluctance because it doesn't sound real good is not as great as other people who are in this court. The pain, the hurt, the long-term psychological damage, that has been occasioned may well be just as great to the victims and their families as any forcible rape could ever be.

My read of this particular situation is absent the opportunity, the likelihood of your reoffending is not great.

The best way for the Court to control your opportunity is two-fold.

One, there has to be some serious period of incarceration that tells you and other persons that this type of behavior is not acceptable.

Second of all, we need to be able to maintain control over your behaviors and try to get you to reevaluate your position in yourself in the future. The best way I can do that is by not complying with the request for concurrent sentence.

Mr. Hamik, in case CR 99-76 which is the conviction for the Class IV felony, the Court in this matter is going to assess the costs of the prosecution against you, and I'm going to sentence you to a period of incarceration and commitment to the State of Nebraska Department of Corrections for not less than 20 months nor more than 5 years.

Mr. Hamik, that is the maximum sentence that I can impose on that particular offense. I will advise you that you will be parole eligible in approximately ten months. That does not mean that you will receive parole. It means that if you earn the good time and the other time credits that are available, that you will be considered for parole if the Department of Parole believes that you are an appropriate person to be released back on to the streets at that time.

In case CR 99-7[5] which is the conviction for the Class II felony, Mr. Hamik, this is obviously the most serious of the events. It's going to be strange because I'm going to give you the lesser of the sentences in this particular case. The lesser as it affects us today. The greater the potential of sentence for tomorrow. I'm going to place you on a concurrent probation — I'm sorry, a consecutive sentence of probation consecutive to the prior order that has been entered by the Court. This sentence of probationary status will commence upon your release on parole or upon institutional discharge from the State of Nebraska Department of Corrections. I'm going to place you under probationary supervision for a period of five years which is the maximum possible time that I can place you on a probationary supervision as allowed by statutes.

I will require that you comply with the standard and traditional terms and conditions of probation that will be

placed on your probation order. Those will include such things as reporting to the probation officer when required, maintaining suitable employment or career situation, doing the — abiding by all of the terms and conditions of probation including not being involved in any and I stress the word "any law violations in the future." A violation of the probation will lead to you being brought back to be resentenced under the 1-to-50 year program.

As additional conditions of that probation, I am going to require that you have no direct or indirect contact with the alleged victim in this particular case. That means you are to neither see, talk to, or have other persons communicate with that victim or her immediate family.

I will also require that you pay the court costs that are involved in this.

I'm going to require that you participate in and complete an appropriate psychological evaluation, and I'm also going to require that as a result of that evaluation that you participate in any counseling that it is determined necessary and appropriate by the probation officer after conferring with counsel. Pursuant to any term or condition of future counseling, you may petition the Court for review and clarification.

Mr. Hamik, the purpose of this is to motivate you and convince you you've got to change and understand that the penitentiary is where you're headed in the future for long periods of time unless your attitude and your behaviors change. It is also designed to give you an opportunity to make those changes and afford the maximum amount of protection that we can to the victim. I hope you use this as an opportunity and not as an escape, an — an opportunity — there's a future for yourself, there's a future for your family, and I hope and pray there's a future for the victim and her family.

## ASSIGNMENTS OF ERROR

The State argues, restated, (1) that Hamik was ineligible for probation under § 28-105(4) and (2) that in any event, a sentence of probation was excessively lenient in this case.

## STANDARD OF REVIEW

■ Interpretation of a statute presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *State v. Spurgin*, 261 Neb. 427, 623 N.W.2d 644 (2001); *State v. Decker*, 261 Neb. 382, 622 N.W.2d 903 (2001). When the State appeals from a sentence, contending that it is excessively lenient, an appellate court reviews the record for an abuse of discretion, and a grant of probation will not be disturbed unless there has been an abuse of discretion by the sentencing court. *State v. Harrison*, 255 Neb. 990, 588 N.W.2d 556 (1999).

## ANALYSIS

### ELIGIBILITY FOR PROBATION

All crimes in Nebraska are statutory in nature. *State v. White*, 256 Neb. 536, 590 N.W.2d 863 (1999). Sentences imposed upon persons convicted of a crime are also statutory. *Id*. Thus, in order to resolve the question of whether Hamik was eligible to be sentenced to probation on his Class II felony conviction, it is necessary to examine those Nebraska statutes pertaining to criminal penalties and eligibility for probation. The starting point for our analysis is § 28-105, which provides in pertinent part:

(1) For purposes of the Nebraska Criminal Code and any statute passed by the Legislature after the date of passage of the code, felonies are divided into eight classes which are distinguished from one another by the following penalties which are authorized upon conviction:

Class I felony    . . . Death
Class IA felony . . . Life imprisonment
Class IB felony . . . Maximum-life imprisonment
                      Minimum-twenty years imprisonment
Class IC felony . . . Maximum-fifty years imprisonment
                      Mandatory minimum-five years
                      imprisonment
Class ID felony . . . Maximum-fifty years imprisonment
                      Mandatory minimum-three years
                      imprisonment
Class II felony   . . . Maximum-fifty years imprisonment
                      Minimum-one year imprisonment

Class III felony ... Maximum-twenty years imprison-
ment, or twenty-five thousand dollars
fine, or both
Minimum-one year imprisonment
Class IV felony ... Maximum-five years imprisonment,
or ten thousand dollars fine, or both
Minimum-none

. . . .

(4) A person convicted of a felony for which a manda-
tory minimum sentence is prescribed shall not be eligible
for probation.

Also pertinent to our analysis is Neb. Rev. Stat. § 29-2260(2)
(Reissue 1995), which provides in part:

Whenever a court considers sentence for an offender con-
victed of either a misdemeanor or a felony for which
mandatory or mandatory minimum imprisonment is not
specifically required, the court may withhold sentence of
imprisonment unless, having regard to the nature and cir-
cumstances of the crime and the history, character, and
condition of the offender, the court finds that imprison-
ment of the offender is necessary for protection of the pub-
lic because:

(a) The risk is substantial that during the period of proba-
tion the offender will engage in additional criminal conduct;

(b) The offender is in need of correctional treatment that
can be provided most effectively by commitment to a cor-
rectional facility[.]

The State contends that § 28-105(1) imposes a mandatory
minimum term of incarceration for persons convicted of a Class
II felony and that Hamik is therefore ineligible for probation
under § 28-105(4). This presents an issue of statutory interpreta-
tion, which we must resolve in accordance with long-established
principles. A fundamental principle of statutory construction
requires that penal statutes be strictly construed. *State v.
Hochstein and Anderson, ante* p. 311, 632 N.W.2d 273 (2001);
*State v. Bjorklund,* 258 Neb. 432, 604 N.W.2d 169 (2000). In con-
struing a statute, a court must attempt to give effect to all of its
parts, and if it can be avoided, no word, clause, or sentence will
be rejected as superfluous or meaningless; it is not within the

province of the court to read anything plain, direct, and unambiguous out of the statute. *State v. Bottolfson*, 259 Neb. 470, 610 N.W.2d 378 (2000); *State v. Kelley*, 249 Neb. 99, 541 N.W.2d 645 (1996). Likewise, it is not for the courts to supply missing words or sentences to a statute to make clear that which is indefinite, or to supply that which is not there. *State v. Woods*, 255 Neb. 755, 587 N.W.2d 122 (1998).

Under principles of statutory construction, the components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible. *State v. Hochstein and Anderson, supra*; *State v. Seberger*, 257 Neb. 747, 601 N.W.2d 229 (1999).

As is readily apparent from the plain language of § 28-105(1), the Legislature utilized different language in specifying the lower limit of a term of incarceration for specific felony classifications. For Class IC and Class ID felonies, the statute prescribes a "[m]andatory minimum" term. For other classifications, including Class IB, Class II, and Class III felonies, the statute prescribes a "[m]inimum" term of incarceration. Section 28-105(4) provides that a person convicted of a felony for which a "mandatory minimum" sentence is prescribed shall not be eligible for probation. However, neither this nor any other statute states that a person such as Hamik who is convicted of a felony for which a "minimum" sentence is prescribed is ineligible for parole. Equating a "minimum" sentence with a "mandatory minimum" sentence, as the State urges, would require that we regard the Legislature's use of the word "mandatory" to be superfluous, contrary to our established principles of statutory construction.

The State argues that the statutory structure for classifying penalties for felonies is incongruous if we do not read the term "minimum" as "mandatory minimum," because then, persons convicted of relatively less serious offenses would require a mandatory minimum sentence without the option of probation, while those convicted of more serious offenses could be sentenced to probation without any incarceration. If any such incongruity exists, it is wholly within the province of the Legislature

to resolve as a matter of policy. Accordingly, we conclude that the State's first assignment of error is without merit.

## CLAIM OF EXCESSIVE LENIENCY

■ Alternatively, the State argues that even if a sentence of probation could lawfully be imposed for a Class II felony, its imposition on the facts of this case resulted in an excessively lenient sentence. Pursuant to § 29-2320, the State may appeal a sentence imposed following a finding or plea of guilty "if such [county] attorney reasonably believes, based on all of the facts and circumstances of the particular case, that the sentence is excessively lenient." Whether the sentence imposed is probation or incarceration is a matter within the discretion of the trial court. *State v. Spurgin*, 261 Neb. 427, 623 N.W.2d 644 (2001). Whether an appellate court is reviewing a sentence for its leniency or its excessiveness, a sentence imposed by a district court that is within the statutorily prescribed limits will not be disturbed on appeal unless there appears to be an abuse of the trial court's discretion. *State v. Harrison*, 255 Neb. 990, 588 N.W.2d 556 (1999). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. Decker*, 261 Neb. 382, 622 N.W.2d 903 (2001); *State v. Harrison, supra*.

Having concluded that probation was a legally permissible sentence in this case, we turn to the question of whether the sentence was excessively lenient under the facts reflected in the record. Neb. Rev. Stat. § 29-2322 (Reissue 1995) provides that where the State challenges a sentence as excessively lenient, the appellate court should consider:

(1) The nature and circumstances of the offense;

(2) The history and characteristics of the defendant;

(3) The need for the sentence imposed:

(a) To afford adequate deterrence to criminal conduct;

(b) To protect the public from further crimes of the defendant;

(c) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and

(d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and

(4) Any other matters appearing in the record which the appellate court deems pertinent.

In *State v. Harrison, supra,* we recognized that where the sentence alleged to be excessively lenient is one of probation, it is also necessary for the trial court and the reviewing appellate court to consider the provisions of § 29-2260, which states in relevant part:

[T]he court may withhold sentence of imprisonment unless, having regard to the nature and circumstances of the crime and the history, character, and condition of the offender, the court finds that imprisonment of the offender is necessary for protection of the public because:

(a) The risk is substantial that during the period of probation the offender will engage in additional criminal conduct;

(b) The offender is in need of correctional treatment that can be provided most effectively by commitment to a correctional facility; or

(c) A lesser sentence will depreciate the seriousness of the offender's crime or promote disrespect for law.

(3) The following grounds, while not controlling the discretion of the court, shall be accorded weight in favor of withholding sentence of imprisonment:

(a) The crime neither caused nor threatened serious harm;

(b) The offender did not contemplate that his or her crime would cause or threaten serious harm;

(c) The offender acted under strong provocation;

(d) Substantial grounds were present tending to excuse or justify the crime, though failing to establish a defense;

(e) The victim of the crime induced or facilitated commission of the crime;

(f) The offender has compensated or will compensate the victim of his or her crime for the damage or injury the victim sustained;

(g) The offender has no history of prior delinquency or criminal activity and has led a law-abiding life for a substantial period of time before the commission of the crime;

(h) The crime was the result of circumstances unlikely to recur;

(i) The character and attitudes of the offender indicate that he or she is unlikely to commit another crime;

(j) The offender is likely to respond affirmatively to probationary treatment; and

(k) Imprisonment of the offender would entail excessive hardship to his or her dependents.

In *State v. Harrison*, 255 Neb. 990, 588 N.W.2d 556 (1999), a case concerning the prosecution for motor vehicle homicide involving a driver impaired by alcohol, we determined that there was competent evidence received at the sentencing hearing which supported the sentence of probation. This evidence included a statement by the defendant expressing deep remorse for her conduct and a promise to maintain sobriety in the future; letters from members of the community attesting to the defendant's sincere attempts to rehabilitate herself; and, of particular importance to the sentencing judge, a letter from relatives of the two victims expressing their opinion that the defendant's remorse and efforts at rehabilitation were genuine. We noted that this evidence established that the defendant was unlikely to commit another crime, that she was likely to respond affirmatively to probationary treatment, and that imprisonment would entail excessive hardship to her children.

In this case, the district court reasoned that consecutive sentences of 20 months' to 5 years' imprisonment on the Class IV felony and 5 years' probation on the Class II felony would result in Hamik's being subject to the State's supervision for a longer period than under the concurrent sentences of incarceration proposed by the State, thus providing Hamik with a better opportunity to alter his attitude and behaviors. While this rationale seems reasonable on its face, it does not square with the record. Hamik did not offer evidence or personally address the court at the sentencing hearing. Unlike the defendant in *Harrison*, he did not acknowledge his criminal conduct or express any remorse. Indeed, during the sentencing hearing, the district court specifically noted that it could not discern in Hamik's attitude any appreciation of a need to make changes in his life. Although the court characterized Hamik as a "predator" who "prey[s] upon

the trust of young girls," it concluded that "absent the opportunity, the likelihood of your reoffending is not great." This conclusion is not supported by the presentence investigation report (PSI) which describes several instances of aggressive and violent conduct on the part of Hamik. For example, the PSI indicates that in October 1999, Hamik instituted an altercation with another individual while both were in a post office, and then said to the individual, "You better watch your kids, I'm going to get them, they're mine."

In reviewing the record, we find none of the grounds favoring probation which are enumerated in § 29-2260(3). Regarding § 29-2260(3)(a) and (b), the crime clearly caused serious psychological harm to the victim. The victim's counselor diagnosed her as suffering from significant trauma from the abuse and stated that she would be "at high risk for needing additional psychological services periodically throughout her lifetime." There is no claim or evidence to suggest that Hamik did not contemplate that his conduct would cause such harm. With respect to § 29-2260(c) through (f), there is no evidence that Hamik acted "under strong provocation" or under circumstances tending to excuse or justify his conduct; or that the victim, who because of her age was incapable of consent, "induced or facilitated commission of the crime." With respect to § 29-2260(f), the PSI reflects that the victim's parents incurred unreimbursed expenses for her counseling and medical services. The PSI reflects that Hamik was convicted of third degree assault in 1986, as well as the conviction on one count of first degree sexual assault on a child for which he was sentenced contemporaneously with the sentence here under review. As noted above, the record does not support a conclusion that the "crime was the result of circumstances unlikely to recur"; that Hamik's "character and attitudes" make him unlikely to reoffend; or that he is likely to "respond affirmatively to probationary treatment." See § 29-2260(h), (i), and (j). Finally, the record does not support a finding that imprisonment would constitute "excessive hardship" to Hamik's dependents within the meaning of § 29-2260(k).

■ As we stated in *State v. Harrison*, 255 Neb. 990, 588 N.W.2d 556 (1999), the sentencing court is not limited in its discretion to any mathematically applied set of factors. The

appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*; *State v. Riley*, 242 Neb. 887, 497 N.W.2d 23 (1993). However, there must be some reasonable factual basis for imposing a particular sentence. Here, while we believe that the trial court was attempting in good faith to fashion a sentence which would both punish Hamik and afford him an opportunity to rehabilitate himself, the record simply does not reflect statutory or other grounds for the imposition of probation. Accordingly, we determine that the sentence constituted an abuse of discretion.

## CONCLUSION

For the reasons stated, we conclude that a sentence of probation in this case was legally permissible but excessively lenient. Accordingly, pursuant to Neb. Rev. Stat. § 29-2323(1)(a) (Reissue 1995), we vacate the sentence of probation and remand the cause to the district court with directions to impose a greater sentence.

SENTENCE VACATED, AND CAUSE
REMANDED FOR RESENTENCING.