STATE OF NEBRASKA, APPELLEE, V.
HECTOR H. ROMO, APPELLANT.
676 N.W.2d 737

Filed March 30, 2004.   No. A-03-925.

Arthur C. Toogood, Adams County Public Defender, for appellant.

Jon Bruning, Attorney General, and Kevin J. Slimp for appellee.

IRWIN, Chief Judge, and SIEVERS and INBODY, Judges.

SIEVERS, Judge.

## INTRODUCTION

Hector H. Romo appeals the decision of the district court for Adams County, which convicted him of accessory to a felony under Neb. Rev. Stat. § 28-204 (Cum. Supp. 2002) and sentenced him to a term of 20 months' to 3 years' imprisonment. Romo appeals both the judgment and the sentence.

## FACTUAL BACKGROUND

On June 25, 2001, Rene Hernandez (Rene) was standing outside his vehicle parked at a residence on North Lexington in Hastings, Nebraska, when a white Honda Civic owned and operated by Romo drove past the residence. As the car passed, a passenger, Robert Dante Starr (Dante), fired 10 to 12 shots in the direction of Rene's vehicle. Also standing outside Rene's vehicle and in the line of fire were Emilio Llanes (Emilio) and Brandon Barrientez. Rene's wife and two children were sitting inside the vehicle. After Dante quit shooting, Romo continued driving for several blocks to where Dante instructed him to stop. Dante then

got out of the car and ran to his grandmother's house, where he waited about an hour, and then he went to a pond and threw the gun in the water. After Dante got out of the car, Romo then drove to Beatrice, Nebraska, where he was later apprehended.

This incident between Romo, Emilio, and Rene was not the first to occur on June 25, 2001. Earlier in the day, Rene had "flipped [Romo] off," and about 30 minutes to an hour prior to the shooting, Rene shattered the back window of Romo's car with a baseball bat in the parking lot of a fast-food restaurant. After the incident at the restaurant, Romo told Bouston Roman (Bouston) that he was "fed up with how Emilio was acting" and that he "planned on getting Emilio." Romo and Bouston then went to pick up Dante, who brought his gun along. Romo, Bouston, and Dante then went to find Emilio, and the shooting took place soon thereafter.

## PROCEDURAL BACKGROUND

Romo was charged by information on September 10, 2001, with "Accessory to Felony," "Class IV Felony." Romo waived his right to a jury trial. Following the bench trial, Romo was found guilty of accessory to a felony, a Class IV felony. Romo then filed a motion for new trial, which motion the trial court overruled, sentencing him to a term of 20 months' to 3 years' incarceration. Romo timely appeals.

## ASSIGNMENTS OF ERROR

Romo asserts, restated, that the trial court erred in (1) finding sufficient evidence to support the conviction; (2) failing to find what felony Romo "believed" Dante had committed, which failure affected Romo's penalty; and (3) imposing an excessive sentence.

## STANDARD OF REVIEW

When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Miner*, 265 Neb. 778, 659 N.W.2d 331 (2003); *State v. Taylor, ante* p. 58, 666 N.W.2d 753 (2003).

■ With regard to questions of law, an appellate court is obligated to reach a conclusion independent of the decision reached by the trial court. *State v. Champoux*, 252 Neb. 769, 566 N.W.2d 763 (1997).

Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of judicial discretion. *State v. Mather*, 264 Neb. 182, 646 N.W.2d 605 (2002).

## ANALYSIS

*Sufficiency of Evidence.*

Romo contends that the trial court erred in finding that there was sufficient evidence to convict him of accessory to a felony under § 28-204. Where a jury has been waived and the judge is the trier of the facts in a criminal case, the factual findings will not be disturbed on appeal unless they are clearly wrong. *State v. Reed*, 228 Neb. 645, 423 N.W.2d 777 (1988). On a claim of insufficiency of the evidence, an appellate court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may an appellate court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt. *State v. Leonor*, 263 Neb. 86, 638 N.W.2d 798 (2002).

Section 28-204 provides in relevant part:

(1) A person is guilty of being an accessory to felony if with intent to interfere with, hinder, delay, or prevent the discovery, apprehension, prosecution, conviction, or punishment of another for an offense, he or she:

. . . .

(b) Provides or aids in providing . . . transportation . . . or other means of effecting escape or avoiding discovery or apprehension;

. . . .

(2) . . . .

. . . .

(c) Accessory to felony is a Class IV felony if the actor violates subdivision . . . (1)(b) . . . of this section, the actor knows of the conduct of the other, and the conduct of the other constitutes a Class III or Class IIIA felony.

■ Therefore, under the statute, in order for Romo to be convicted of a Class IV felony, Dante's conduct must constitute a Class III or Class IIIA felony. Dante testified during trial that he was convicted of terroristic threats and two counts of "attempted aggravated assault." While Nebraska does not have a crime statutorily labeled "aggravated assault," such term could encompass, as is pertinent here, second degree assault, intentionally causing bodily injury with a dangerous instrument, a Class IIIA felony, see Neb. Rev. Stat. § 28-309 (Cum. Supp. 2002); or first degree assault, knowingly and intentionally causing serious bodily injury, a Class III felony, see Neb. Rev. Stat. § 28-308 (Reissue 1995). Either of such crimes committed by Dante would suffice for the predicate offense of a Class III or Class IIIA felony for Romo's Class IV felony accessory conviction. A dangerous instrument is any object which, because of its nature and the manner and intention of its use, is capable of inflicting bodily injury. *State v. Ayres*, 236 Neb. 824, 464 N.W.2d 316 (1991). Obviously, a handgun is a dangerous instrument which can cause serious bodily injury. Consequently, Dante's admission that he was convicted of two counts of "attempted aggravated assault" cannot by itself carry the State's burden to show the predicate offense by Dante to convict Romo for Class IV felony accessory. However, such admission can be considered along with the other evidence of Dante's actions to determine whether a predicate felony was proved. Therefore, in order to determine whether the evidence was sufficient to convict Romo as an accessory to a felony committed by Dante, we look to whether the evidence was sufficient for the trial court to find that Dante committed either attempted first degree assault or attempted second degree assault, whether Romo knew of such conduct, and whether Romo had the requisite intent.

■ "One commits an attempted first degree assault if one intentionally engages in conduct which is a substantial step in a course of conduct 'intended or known to cause' 'serious bodily injury to another person.'" *State v. McBride*, 252 Neb. 866, 878, 567 N.W.2d 136, 145 (1997). Attempted second degree assault would be analogous, substituting the elements of second degree assault, e.g., attempt to cause bodily injury with a dangerous instrument.

Dante testified that he and Romo were planning to "ride around" on the evening of June 25, 2001. Dante testified that he did not like Rene and that when he saw Rene as they drove by in Romo's car, Dante "went ahead and let some shots off." He admitted that he fired at least 10 to 12 shots "in the vicinity" of Rene. Romo then drove several blocks, and Dante got out and ran. Dante's version of the events, as well as Dante's description of his and Romo's intentions, varies somewhat from Romo's version. Romo did not testify at trial. However, he waived his *Miranda* rights and spoke to Det. Adam Story of the Hastings Police Department on the ride back to Hastings from Beatrice. Detective Story testified that Romo said he "was fed up with how Emilio was acting" and that Romo "planned on getting Emilio." Romo told Detective Story that on the night of the shooting, he knew Dante had a gun when Romo picked Dante up and they intended to go find Emilio. Romo said he drove the car while Dante fired the gun about 10 times. Romo then drove a few more blocks, and Dante got out and fled.

In viewing the evidence most favorably to the State, the evidence shows that Dante intentionally took a gun with him in Romo's car and planned to "get" someone, either Emilio or Rene, depending on whose version is accepted. Further, Dante fired the gun 10 to 12 times in the direction of six people, including two children. Dante's conduct was sufficient to constitute a substantial step in a course of conduct intended or known to cause serious bodily injury to another person. See *State v. McBride, supra* (evidence was sufficient for first degree attempted assault charge where witness saw defendant pull out gun and fire at occupied automobile). Anytime one fires a gun in the direction of a group of people, there is a substantial risk that serious bodily injury could result from the conduct. Therefore, we find there is sufficient evidence to determine that Dante committed attempted first degree assault, a Class III felony. The same evidence would obviously also sustain a finding that Dante's conduct constituted attempted second degree assault.

We now turn to whether Romo knew of Dante's felonious conduct and whether Romo had the intent to "interfere with, hinder, delay, or prevent the discovery, apprehension, prosecution, conviction, or punishment" of Dante by driving the car in

the commission of the felony and fleeing the scene of the crime. See § 28-204. As to Romo's knowledge, the Nebraska Supreme Court has found that the knowledge element is satisfied if one knows of the conduct. See *State v. Severin*, 250 Neb. 841, 553 N.W.2d 452 (1996). According to Romo's own admission to Detective Story, Romo knew that Dante had the gun with him when he got into Romo's car on June 25, 2001. Further, Romo admitted they intended to find Emilio and "get" him, and Romo obviously knew of the shots being fired from the car he was driving. There is sufficient evidence to satisfy Romo's knowledge of Dante's felonious conduct.

Finally, we must determine whether Romo had the requisite intent. There is no doubt that Romo drove the car as Dante fired the shots and that once Dante quit firing, Romo drove away from the scene and then let Dante out of the car so he could flee. Romo did not report the incident to law enforcement, but instead fled to Beatrice. Based on these circumstances, any fact finder could infer that Romo had the requisite intent to transport Dante during the crime and while Dante fled the scene. The evidence was sufficient to prove the elements of accessory to a felony, including Dante's predicate felony, and the trial court did not err in finding Romo guilty.

*Finding of Felony.*

As to Romo's second assignment of error, Romo's entire argument is as follows:

> [Romo] was the driver of a car from which Dante . . . fired several shots. Since there was no discussion ahead of the time of the incident about what Da[n]te . . . was going to do . . . and, since [Romo] was driving during the incident, and continued driving away from the scene, [Romo] would have no way of knowing what crime Dante . . . may have committed, other than discharging a firearm within the city limits.
>
> The Court found [Romo] guilty of a Class IV felony. In order to be guilty of a Class IV felony, [Romo] must have believed Dante . . . committed a Class III A or Class II A felony.
>
> The District Court failed to find what crime that [Romo] believed that Dante . . . had committed. Such finding is

necessary to determine the punishment that [Romo] is subject to.

Brief for appellant at 8.

This argument is not supported by citation to the record or case law. Romo did not request that the trial judge make a specific finding regarding the predicate felony on which Romo's conviction of accessory to a felony was based, but by convicting him of a Class IV felony, the predicate crime had to be a Class III or Class IIIA felony. However, even if he had made such a request, the assignment would be without merit, because a trial judge sitting without a jury is not required to articulate findings of fact or conclusions of law in criminal cases. See *State v. Franklin*, 241 Neb. 579, 489 N.W.2d 552 (1992). See, also, *State v. Dake*, 247 Neb. 579, 529 N.W.2d 46 (1995); *State v. Lozano*, 209 Neb. 772, 311 N.W.2d 529 (1981).

Additionally, it is clearly not the duty of the trial court to determine what crime Romo "believed" Dante had committed; the court must determine whether a predicate felony to sustain the charge of accessory has been committed. We have already found there was sufficient evidence to find Dante guilty of attempted first degree assault or attempted second degree assault. Thus, we find that the trial judge did not err in finding Romo guilty of a Class IV felony based on Dante's commission of either attempted first degree assault or attempted second degree assault. This assignment of error is without merit.

That said, we encourage trial judges, when sitting as finders of fact, to make a specific finding of the offense that the principal committed when a defendant is charged with being an accessory to a felony in violation of § 28-204. Although not yet required by law, such a finding would aid appellate review, because the penalty may depend on the class of felony committed by the principal. Clearly, when a jury is the fact finder, the jury should be instructed so as to ensure that the underlying offense of the principal is specifically determined.

*Excessive Sentence.*

Romo contends that the trial court erred in sentencing him to 20 months' to 3 years' incarceration, rather than placing him on probation. Whether the sentence imposed is probation or

incarceration is a matter within the discretion of the trial court. *State v. Hamik*, 262 Neb. 761, 635 N.W.2d 123 (2001). Whether an appellate court is reviewing a sentence for its leniency or its excessiveness, a sentence imposed by a district court that is within the statutorily prescribed limits will not be disturbed on appeal unless there appears to be an abuse of the trial court's discretion, which abuse exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Id.*

The trial court declined to give Romo probation because placing Romo on probation "would promote disrespect for the law." Further, Romo failed to cooperate with probation in regard to the presentence investigation report, and he had a previous conviction for a concealed weapon where his probation was revoked. Thus, the trial court found there was a likelihood that Romo would engage in additional criminal conduct. Thus, the trial court did not abuse its discretion in determining that Romo was not a suitable candidate for probation.

We also note the seriousness of the offense—driving by and shooting at three people standing outside a vehicle when a mother and her two children are inside the vehicle. This drive-by shooting put in danger not only those six people, but the community at large. The fact that no one was hurt does not diminish the seriousness of the offense. The trial court did not abuse its discretion when it sentenced Romo.

AFFIRMED.