STATE OF NEBRASKA, APPELLANT, V.
JEREMIAH L. FIELDS, APPELLEE.
688 N.W.2d 878

Filed November 19, 2004.   No. S-03-1184.

Jon Bruning, Attorney General, and Marie Colleen Clarke, and Stuart J. Dornan, Douglas County Attorney, and Sandra L. Denton, for appellant.

Michael J. Decker for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

The State of Nebraska appeals Jeremiah L. Fields' sentences. It contends the sentences were excessively lenient. A jury convicted Fields of count I, first degree false imprisonment; count II, first degree sexual assault; count III, robbery; count IV, use of a deadly weapon to commit a felony; and count V, possession of a deadly weapon by a felon. The district court sentenced him to 5 to 5 years' imprisonment for counts I and IV and 5 to 10 years' imprisonment for each remaining count, with the sentences on counts I, II, III, and V running concurrently and count IV running consecutively with credit for time already served. The effect of

the sentences was a total time of 10 to 15 years' imprisonment, making Fields eligible for parole in 4 years from the date of sentencing and for release on good time credits in 6½ years. Because of the severity of the crimes and the likelihood that Fields will reoffend, we determine that the sentences were excessively lenient. We vacate Fields' sentences and remand the cause with instructions for a different judge to impose greater sentences.

## I. BACKGROUND

Because the facts are pivotal to whether the sentences were excessively lenient, we set them out in detail. On October 15 or 16, 2002, Fields sexually assaulted J.H., a 43-year-old female who lived alone. She had attended special education classes through the first semester of the ninth grade. J.H. has one son, who was raised by her sister. She receives disability and cannot manage her own finances.

On October 15, 2002, J.H. fell asleep and later awoke to find Fields, a stranger, entering the room with a gun. He uttered, "Bitch, wake up." He then forced J.H. to the living room, pointed the gun at her, and demanded that she remove her clothes; terrified, she complied.

Pointing a gun, Fields next demanded J.H. to perform oral sex on him. During this sexual assault, Fields struck her with the gun multiple times on the back of the head. He then ordered her into the bedroom, instructed her to lie down, placed a pillow over her face, and sexually penetrated her vagina with the gun. She pleaded with him to stop because of the pain, and he refused. He then penetrated her vagina with his penis.

Fields next forced J.H. to the basement at gunpoint and ordered her to get on a mattress. He then gagged and bound her with cords and beat her with a leather belt. He then left.

While Fields was gone, J.H. attempted to get loose, but was unsuccessful. Fields returned, untied her, and forced her to help him load a television and other items into his car. He pointed a gun at J.H. and threatened that if she called the police, he would come back and kill her or have one of his "homeboys" kill her.

After Fields left, J.H. called her sister, who called the police, and J.H. was then taken to the hospital. The record contains photographs showing numerous bruises and scratches and swelling

on J.H.'s face, neck, back, arms, wrists, legs, ankles, and torso. J.H. told police that Fields had tattoos and described his vehicle. The vehicle was later recovered after it had been reported as being stolen. J.H. later identified Fields in a photographic lineup and at trial.

Before trial, a hearing was held pursuant to Neb. Evid. R. 404, Neb. Rev. Stat. § 27-404 (Reissue 1995), concerning evidence that Fields attempted to hire someone to murder J.H. The record contains a transcript of a recorded telephone conversation that Fields made while in jail pending trial. During the conversation, Fields attempted to arrange J.H.'s murder, offering $4,000 to $5,000 to a friend if he would "take her out before trial." Fields made it clear during the conversation that he wanted J.H. to "be dead." The record also contains a newspaper article stating that Fields was charged with conspiracy to commit first degree murder for the murder-for-hire attempt. The court determined that the evidence could be introduced at trial, although the State ultimately did not do so. The parties stipulated that DNA recovered from the rape kit was consistent with Fields' DNA profile.

Fields did not introduce evidence, and the jury convicted him of all charges. Evidence at sentencing showed that Fields was 23 years old and has an eighth grade education. He has two children, but no support orders have been entered. The presentence report showed that Fields used and distributed illegal drugs, and he admitted that he has had women perform sexual favors to obtain drugs from him. He stated to the probation officer that he was under the influence of methamphetamine and "crack" during the assault.

The report also showed that Fields has had over 60 charges or arrests, including arrests for crimes involving aggression or violence such as the use of a weapon to commit a felony, assault and battery, robbery, and multiple counts of third degree assault and disorderly conduct.

The probation officer who prepared the presentence investigation report noted:

Fields['] record reflects a history of illegal and anti-social behavior. The record indicates previous ass[au]ltive behavior. He was incarcerated for a period of six-months for assault 3rd degree in 2002. There were several charges of assault

and/or domestic related charges that were declined. Which is . . . an indicator that his temper and his emotions are not under control and he may re-offend at any given time.

The officer recommended incarceration without recommending a specific amount of time. Neither J.H. nor members of her family attended the sentencing hearing.

Fields was sentenced to 5 to 5 years' imprisonment for counts I and IV and 5 to 10 years' imprisonment for each remaining count, with the sentences on counts I, II, III, and V running concurrently and count IV running consecutively. When entering the sentence, the court stated, "According to my mathematics, that means a term of imprisonment of not less than 10, no[r] more than 20 years imprisonment."

## II. ASSIGNMENTS OF ERROR

The State assigns, consolidated and rephrased, that the court imposed an excessively lenient sentence.

## III. STANDARD OF REVIEW

Whether an appellate court is reviewing a sentence for its leniency or its excessiveness, a sentence imposed by a district court that is within the statutorily prescribed limits will not be disturbed on appeal unless there appears to be an abuse of the trial court's discretion. *State v. Hamik*, 262 Neb. 761, 635 N.W.2d 123 (2001). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Id.*

## IV. ANALYSIS

The State contends that the court abused its discretion when it sentenced Fields. The State points out factors such as Fields' history of violence, the severity of the assault on J.H., his likelihood to reoffend, and his need for a long-term, structured program of rehabilitation. The State also notes that while the trial judge stated that Fields would serve 10 to 20 years' imprisonment, the prison term is actually 10 to 15 years, and that Fields will be eligible for parole in 4 years from the date of sentencing and could be released on good time credits in 2½ years after that time.

## 1. STATUTORY PROVISIONS

The provisions under the applicable statutes are as follows:

(1) First degree sexual assault, robbery, and use of a weapon to commit a felony are Class II felonies, each punishable by 1 to 50 years' imprisonment. Neb. Rev. Stat. §§ 28-319(2), 28-324(2), and 28-1205(2)(b) (Reissue 1995), and 28-105(1) (Cum. Supp. 2002). The sentence for use of a weapon to commit a felony must be served consecutively to any other sentence imposed. § 28-1205(3).

(2) First degree false imprisonment is a Class IIIA felony punishable by 0 to 5 years' imprisonment, a $10,000 fine, or both. Neb. Rev. Stat. §§ 28-314(2) (Cum. Supp. 2002) and 28-105.

(3) A felon in possession of a weapon is a Class III felony punishable by 1 to 20 years' imprisonment, a $25,000 fine, or both. Neb. Rev. Stat. §§ 28-1206(3)(b) (Reissue 1995) and 28-105.

When the State challenges a sentence as excessively lenient, the appellate court should consider:

(1) The nature and circumstances of the offense;

(2) The history and characteristics of the defendant;

(3) The need for the sentence imposed:

(a) To afford adequate deterrence to criminal conduct;

(b) To protect the public from further crimes of the defendant;

(c) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and

(d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and

(4) Any other matters appearing in the record which the appellate court deems pertinent.

Neb. Rev. Stat. § 29-2322 (Reissue 1995).

We have stated, however, that a sentencing court is not limited in its discretion to any mathematically applied set of factors. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Harrison*, 255 Neb. 990, 588 N.W.2d 556 (1999). But there also must be some

reasonable factual basis for imposing a particular sentence. *State v. Hamik*, 262 Neb. 761, 635 N.W.2d 123 (2001).

For example, we refused to find a sentence excessively lenient in a motor vehicle homicide case when the defendant expressed deep remorse for her conduct and promised to maintain sobriety, there were letters from the community attesting to the defendant's rehabilitation efforts, and the record contained letters from the victim's family expressing their opinion that the defendant's remorse and rehabilitation were genuine. In addition, the defendant was unlikely to commit another crime, she would respond favorably to probation, and imprisonment would place a hardship on her children. *State v. Harrison, supra.*

In contrast, we held that a sentence was excessively lenient in a case involving sexual assault of a child. *State v. Hamik, supra.* In *Hamik*, the defendant was sentenced to probation for sexual assault to be served consecutively to a sentence of incarceration imposed in another case. We noted that unlike *Harrison*, the defendant did not address the court at his sentencing hearing, did not acknowledge his criminal conduct, and did not express remorse. The trial court was unable to discern in the defendant's attitude any appreciation of a need to make changes in his life. In addition, the presentence investigation report indicated a history of aggressive and violent conduct.

Likewise, the Nebraska Court of Appeals has held that consecutive sentences of 8 to 15 years' imprisonment for attempted second degree murder and 2 to 5 years' imprisonment for the use of a firearm in the commission of a felony were excessively lenient. *State v. Silva*, 7 Neb. App. 480, 584 N.W.2d 665 (1998). The Court of Appeals noted that the crime was particularly unsettling because the defendant drove in front of his wife's car and, using a firearm, opened fire, striking the windshield and other portions of the car. He had a history of violent behavior and was likely to reoffend. The Court of Appeals resentenced him to consecutive prison sentences of 20 to 40 years and 5 to 10 years.

### 2. APPLICATION OF STATUTORY FACTORS

#### (a) Nature and Circumstances of Crime

It would unnecessarily lengthen this opinion to repeat the nature and circumstances involving these crimes. In brief, the

cruel acts inflicted on J.H. would make the Marquis de Sade flinch.

### (b) History and Characteristics of Fields and Need for Sentences Imposed

The record shows that Fields has a long history of aggressive and violent behavior. The presentence investigation report reveals a person who is routinely involved with law enforcement, has problems with illegal drugs, and is highly likely to reoffend. Fields has not acknowledged his criminal conduct, nor has he expressed remorse for his crimes. Obviously, Fields needs a longer period of structure and rehabilitation. We determine that the sentences imposed do not provide adequate deterrence to criminal conduct.

### (c) Other Matters Appearing in Record Deemed Pertinent

The court did not make factual findings to explain the sentences imposed. The court also did not address the nature and circumstances of the crime or Fields' criminal history. Instead, the court stated, albeit mistakenly, that by its calculations, Fields would serve 10 to 20 years' imprisonment. However, as the State points out, because most sentences were below the maximum term and were concurrent, the sentences were equivalent to 10 to 15 years' imprisonment. Under the good time credit statutes, Fields would be eligible for parole in about 4 years from the date of sentencing, with a mandatory release date 2½ years later. See Neb. Rev. Stat. §§ 83-1,107 to 83-1,110 (Supp. 2003). The only consecutive sentence imposed was the sentence for the use of a firearm, which sentence is required to be consecutive by law. See § 28-1205(3).

### V. CONCLUSION

We determine that the court imposed excessively lenient sentences. Under Neb. Rev. Stat. § 29-2323 (Reissue 1995), when an appellate court determines that a sentence imposed is excessively lenient, it shall either (1) remand the cause for imposition of a greater sentence, (2) remand the cause for further sentencing proceedings, or (3) impose a greater sentence. Under § 29-2323(1), we vacate the sentences and remand the cause to the district court

with instructions to impose greater sentences. The sentences should be imposed by a different district court judge than the original sentencing judge.

SENTENCES VACATED, AND CAUSE
REMANDED FOR RESENTENCING.